Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/13/2017 09:09 AM CST

STATE OF NEBRASKA, APPELLEE, V.
JUAN E. CASTANEDA, APPELLANT.
___ N.W.2d ___

Filed January 13, 2017.    No. S-16-273.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Sentences: Due Process: Appeal and Error.** Whether the district court's resentencing of a defendant following a successful appeal violates the defendant's due process rights presents a question of law.
4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.
5. **Sentences.** When imposing a sentence, a sentencing judge should consider the following factors related to the defendant: (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, (6) motivation for the offense, (7) nature of the offense, and (8) amount of violence involved in the commission of the crime.
6. **Criminal Law: Sentences: Minors: Aggravating and Mitigating Circumstances.** Neb. Rev. Stat. § 28-105.02(2) (Reissue 2016) includes a nonexhaustive list of mitigating factors that a sentencing court must take into consideration when sentencing a juvenile for a Class IA felony.
7. **Sentences.** In considering a sentence, a court is not limited in its discretion to any mathematically applied set of factors.
8. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's

demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

9. ____. It is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.

10. **Constitutional Law: Minors: Sentences.** Life imprisonment without the possibility of parole for juveniles convicted of nonhomicide offenses is unconstitutional; such juvenile offenders must be given some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.

11. **Constitutional Law: Homicide: Minors: Sentences.** There is no categorical bar against life sentences without parole for juveniles convicted of homicide offenses; instead, the sentencing court must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile.

12. **Due Process: New Trial: Convictions: Sentences.** Due process of law requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial.

13. **Sentences: Presumptions: Appeal and Error.** There is no presumption of vindictiveness when a sentence is increased after a successful appeal of the prior conviction if a different judge or jury handed down the second, harsher sentence.

14. **Sentences: Presumptions: Proof.** When the presumption of vindictiveness is not applied, the burden remains with the defendant to prove actual vindictiveness.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Annie O. Hayden for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Funke, J.

## INTRODUCTION

In October 2010, the appellant, Juan E. Castaneda, was convicted by a jury of two counts of first degree felony

murder, one count of attempted second degree murder, one count of attempted robbery, one count of criminal conspiracy, and three counts of use of a deadly weapon to commit a felony. He was sentenced as follows: life imprisonment for each first degree murder; 10 to 20 years' imprisonment for attempted second degree murder, to be served concurrently with all; 10 to 15 years' imprisonment for attempted robbery, to be served concurrently with all but its respective weapon conviction; 10 to 15 years' imprisonment for criminal conspiracy, to be served concurrently with all; and 10 to 15 years' imprisonment for each weapon conviction, to be served consecutively only with each respective first degree murder or attempted robbery conviction.

On direct appeal, we affirmed Castaneda's convictions, vacated all his sentences, and remanded the cause for resentencing.[1] We vacated Castaneda's life sentences under the U.S. Supreme Court's decision in *Miller v. Alabama*.[2] We also vacated his other sentences because the sentencing court committed plain error by ordering Castaneda's weapon sentences to run concurrently with other sentences, instead of consecutively with all other sentences as required by law.[3]

Following a full evidentiary hearing and arguments, Castaneda was resentenced in accordance with Nebraska statutes. Castaneda appeals his resentencing. We affirm.

## BACKGROUND

The events underlying Castaneda's eight convictions and sentences involve three shootings that occurred in three separate locations in Omaha, Nebraska, within an hour. In our opinion on Castaneda's direct appeal, we set forth the facts of the case in detail.[4]

---

[1] See *State v. Castaneda*, 287 Neb. 289, 842 N.W.2d 740 (2014).

[2] *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[3] See Neb. Rev. Stat. § 28-1205(3) (Reissue 2016).

[4] See *Castaneda, supra* note 1.

The individuals responsible for the crimes were Edgar Cervantes, Eric Ramirez, and Castaneda. The State entered into a plea agreement with Cervantes to dismiss the murder charges against him in exchange for his testimony.

According to Cervantes, in November 2008, he asked Ramirez if he wanted "to go rob some people." That same evening, Castaneda accompanied Cervantes and Ramirez when they left a party to give Jacob Shantz a ride home. While Cervantes was driving to Shantz' residence, he removed a gun from under his seat and gave it to Ramirez.

After dropping Shantz off at his home, the three men drove to 13th and Dorcas Streets in Omaha. While at that location, Cervantes stayed in the vehicle and Ramirez and Castaneda exited the vehicle. Ramirez and Castaneda approached two males, later identified as Mark and Charles McCormick. According to the McCormicks, the two men, one of them armed, came up to them as they were leaving their cousin's residence. The men demanded money but retreated after Charles threatened them with a "piece of wood" or "tree stump."

Shortly thereafter, at about 10:45 p.m., all three men drove to 16th and Dorcas Streets where they encountered Luis Silva inside his vehicle outside of his home. Ramirez and Castaneda approached Silva to rob him. Castaneda pulled Silva from his vehicle, and Ramirez fatally shot him.

Then, at about 11 p.m., Cervantes, Ramirez, and Castaneda drove to 50th Street and Underwood Avenue where they observed a man, later identified as Charles Denton, walk up to an automatic teller machine. When Denton saw two men approaching, he returned to his vehicle and started to drive away with his passenger. The two men, Ramirez and Castaneda, ran toward Denton's vehicle, and one reached the driver's side window and demanded money. The man also fired his gun at the vehicle, striking Denton. Denton survived his injuries.

The three men then drove south until they reached 52d and Leavenworth Streets. At that location, they saw Tari Glinsmann

leaving a gas station. Cervantes stopped the vehicle, and Ramirez and Castaneda got out. According to Cervantes, Castaneda pulled Glinsmann from her vehicle and Ramirez fatally shot her. The statement about Glinsmann's murder was supported by video evidence and Castaneda's handprint on the hood of her car. While Cervantes said that Ramirez told him Glinsmann had no money, she was found with cash, jewelry, and the keys to the gas station, where she had worked and had just finished her shift.

At the time of the shootings, Castaneda was 15 years 11 months old. As previously mentioned, Castaneda was convicted of two counts of first degree felony murder, one count of attempted second degree murder, one count of attempted robbery, one count of criminal conspiracy, and three counts of use of a deadly weapon to commit a felony. Castaneda was sentenced to life imprisonment for each first degree murder and 10 to 20 years' imprisonment for attempted murder, with each sentence to run concurrently with the other. He was further sentenced to 10 to 15 years' imprisonment for attempted robbery, to be served concurrently with all but its respective weapon conviction; 10 to 15 years' imprisonment for criminal conspiracy, to be served concurrently with all; and 10 to 15 years' imprisonment for each weapon conviction, to be served consecutively only with each respective first degree murder or attempted robbery conviction.

On direct appeal, we affirmed Castaneda's convictions.[5] While the appeal was pending, however, the U.S. Supreme Court decided *Miller*.[6] We rejected the State's argument that *Miller* should not apply to Castaneda's life in prison sentences, because Nebraska's penalty statute did not contain the qualifier "without parole." We held that a sentence of life in prison in Nebraska essentially contains no possibility of parole, because parole is available only upon a sentence's

---

[5] See *Castaneda, supra* note 1.

[6] See *Miller, supra* note 2.

being commutated, which—as "'an ad hoc exercise of executive clemency'"[7]—is a distinctly different concept than parole as a matter of law. Accordingly, we vacated Castaneda's life sentences for first degree felony murder. We also vacated his other sentences, because the sentencing court committed plain error by ordering Castaneda's use of a deadly weapon to commit a felony sentences to run concurrently with his other sentences, instead of consecutively with all other sentences as required by § 28-1205(3). We remanded the cause for resentencing.

Upon remand, the cause was assigned to a different district judge, as the original judge had retired. Before resentencing, a full evidentiary resentencing hearing was held. At that hearing, Castaneda called three witnesses: Beverly Shields, a juvenile detention specialist at the Douglas County Youth Center at the time Castaneda was housed there prior to trial; Dr. Kirk Newring, a psychologist who interviewed Castaneda shortly before resentencing; and Dr. Colleen Conoley, an adolescent neuropsychologist who completed an evaluation on Castaneda in 2014.

Shields testified that Castaneda was a model prisoner and "was the best kid [she] ever worked with" during her employment at the youth center. Newring testified as to the prison culture and the effects of segregation on a person. Conoley testified about Castaneda's current mental status, having been diagnosed as schizophrenic; the maturation process of the adolescent brain; and her belief that Castaneda is not a high risk to reoffend "at this point of his development."

Additionally, a presentence report was ordered for sentencing. The presentence report included, in part, the following information: Conoley's evaluation of Castaneda; the police reports of the crimes; letters from the victims' friends and families; Castaneda's age at the time of his crimes; Castaneda's prior criminal history of graffiti, theft by unlawful taking,

---

[7] See *Castaneda, supra* note 1, 287 Neb. at 313, 842 N.W.2d at 758.

shoplifting, and disorderly conduct; Castaneda's overall grade point average from seventh to ninth grades of 3.58, high school diploma, and paralegal studies certificate; Castaneda's involvement in the "Must Be Criminal security threat group"; Castaneda's score as a high risk to reoffend on the "LS/CMI," a risk/needs assessment tool; a summary of Castaneda's 56 misconduct reports from his incarceration: 45 reports between February 4, 2011, and January 21, 2012, and 11 reports between September 14, 2012, and March 24, 2015; and Castaneda's probation officer's recommendation that Castaneda be incarcerated "for a very long time to come."

At the resentencing hearing, the court heard arguments by counsel for Castaneda and the State. The court pronounced the following prison sentences: 40 to 50 years for each first degree murder conviction, 10 to 10 years for attempted second degree murder, 5 to 5 years for the attempted robbery, 5 to 5 years for criminal conspiracy, and 5 to 5 years for each weapon conviction. The criminal conspiracy and attempted robbery sentences were ordered to run concurrently with each other and with the attempted murder sentence. All other sentences were ordered to run consecutively to each other. The total combined sentence was 105 to 125 years' imprisonment. Castaneda was given credit for 2,652 days served. Castaneda appeals.

## ASSIGNMENTS OF ERROR

Castaneda assigns, restated, that the district court erred in imposing (1) excessive sentences, (2) an aggregate de facto life sentence prohibited under due process and the Eighth Amendment, and (3) more severe sentences than Castaneda originally received.

## STANDARD OF REVIEW

[1,2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[8] A judicial abuse of discretion exists when

---

[8] *State v. Mantich, ante* p. 407, ___ N.W.2d ___ (2016).

the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[9]

[3,4] Whether the district court's resentencing of a defendant following a successful appeal violates the defendant's due process rights presents a question of law.[10] When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court.[11]

## ANALYSIS

### Excessive Sentences

Castaneda argues that his aggregate sentence of 105 to 125 years' imprisonment is excessive because the court failed to adequately consider the required sentencing factors. Specifically, he alleges that the court did not give adequate consideration to his age. Castaneda also argues the sentencing was tailored only to his crimes rather than to him as an individual, as required by *State v. Harrison*.[12] Finally, he contends that the court did not give sufficient consideration to the aggregate length of the sentences; this argument is essentially the same as Castaneda's second assignment of error that the court imposed an aggregate de facto life sentence.

[5,6] There is no contention that Castaneda's sentences were outside the permissible statutory ranges. Accordingly, the question is whether the court abused its discretion in the sentences it imposed upon Castaneda. We have stated that when imposing a sentence, a sentencing judge should consider the following factors related to the defendant: (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record

---

[9] *Id.*

[10] *State v. Miller*, 284 Neb. 498, 822 N.W.2d 360 (2012).

[11] See *State v. Rothenberger*, 294 Neb. 810, 885 N.W.2d 23 (2016).

[12] See *State v. Harrison*, 255 Neb. 990, 1005, 588 N.W.2d 556, 565 (1999) ("a sentence should fit the offender and not merely the crime").

of law-abiding conduct, (6) motivation for the offense, (7) nature of the offense, and (8) amount of violence involved in the commission of the crime.[13] Additionally, Neb. Rev. Stat. § 28-105.02(2) (Reissue 2016), which was amended by the Legislature after *Miller*, includes the following nonexhaustive list of mitigating factors that a sentencing court must also take into consideration when sentencing a juvenile for first degree murder, a Class IA felony:

> (a) The convicted person's age at the time of the offense;
>
> (b) The impetuosity of the convicted person;
>
> (c) The convicted person's family and community environment;
>
> (d) The convicted person's ability to appreciate the risks and consequences of the conduct;
>
> (e) The convicted person's intellectual capacity; and
>
> (f) The outcome of a comprehensive mental health evaluation of the convicted person conducted by an adolescent mental health professional licensed in this state. The evaluation shall include, but not be limited to, interviews with the convicted person's family in order to learn about the convicted person's prenatal history, developmental history, medical history, substance abuse treatment history, if any, social history, and psychological history.[14]

[7,8] In considering a sentence, a court is not limited in its discretion to any mathematically applied set of factors.[15] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[16]

---

[13] See *State v. Carpenter*, 293 Neb. 860, 880 N.W.2d 630 (2016).

[14] See *Castaneda, supra* note 1.

[15] See *State v. Raatz*, 294 Neb. 852, 885 N.W.2d 38 (2016).

[16] *Id.*

We note in the present case that the sentencing judge, in fact, considered each of these factors and discussed them at the sentencing hearing. The sentencing judge acknowledged that he was not the original trial or sentencing judge and, instead, relied on the presentence report, evidentiary hearing, and arguments of counsel in sentencing Castaneda. The court stated that it considered two main factors: the nature of the crimes committed and Castaneda's age when he committed the crimes.

The court specifically identified numerous mitigating factors that it considered—including the fact that Castaneda was not the shooter, his minimal criminal history, his studiousness, and his reasonable behavior as a prisoner. Most significantly, the court gave great weight to Castaneda's age at the time of the offense, the impulsivity of the crimes, and the fact that as a result of his age, he could not fully appreciate the consequences of his actions.

Conversely, the court also gave significant weight to the nature of the offenses Castaneda was convicted of and the impact it had on the victims' friends and families. The court specifically discussed that because of Castaneda's age, it wanted to assume that he was naive to the violence that would occur that night; however, the court could not make such an assumption because of Castaneda's continued participation after being presented with opportunities to remove himself from the crime spree as the violence escalated. Ultimately, the court concluded that the several and disconnected crimes warranted individual punishment by running his sentences consecutively. The court's reasoning reflects sentences tailored to both Castaneda and his crimes.

The sentencing range for Castaneda's first degree murder convictions, Class IA felonies, is 40 years to life in prison.[17]

---

[17] § 28-105.02(1). See *Castaneda, supra* note 1 (holding that sentencing changes to penalty provisions for Class IA felonies committed by persons under 18 years of age, enacted by 2013 Neb. Laws, L.B. 44, § 2, codified as § 28-105.02, should apply to Castaneda's resentencing).

Castaneda's convictions for attempted murder in the second degree, criminal conspiracy, and use of a deadly weapon to commit a felony are each Class II felonies subject to a sentence of 1 to 50 years' imprisonment,[18] and attempted robbery is a Class III felony that, when committed, was subject to a sentence of 1 to 20 years' imprisonment, a $25,000 fine, or both.[19] Castaneda was resentenced as set forth above. Each of his sentences were on the low end of their respective statutory sentencing ranges. Further, the attempted robbery and criminal conspiracy sentences were made concurrent with the attempted second degree murder sentence.

[9] The court gave sufficient consideration to each of the relevant factors, determining that leniency was warranted in Castaneda's sentences, evidenced by each being on the low end of the potential range. But, the court determined that both murders and the attempted murder were each distinct and separate incidents, offering Castaneda the choice to participate or flee at each scene. Under our prior holdings, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively.[20] Therefore, Castaneda's separate decision to commit each crime warranted a distinct punishment for each. In light of these facts, we cannot conclude that the district court abused its discretion in sentencing Castaneda.

DE FACTO LIFE SENTENCE

In Castaneda's second assignment of error, he argues that the aggregate of his sentences constitutes a de facto life sentence. Further, he contends that this aggregate sentence does not provide a "meaningful opportunity for release," under *Miller*,[21]

---

[18] See Neb. Rev. Stat. § 28-105 (Supp. 2015).

[19] See § 28-105 (Reissue 2008).

[20] *State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015).

[21] *Miller, supra* note 2.

and that the court failed to make a finding he was "[i]rreparably [c]orrupt."[22]

In *Miller*, the U.S. Supreme Court held that a mandatory life sentence without parole for those under the age of 18 at the time of their crimes violated the Eighth Amendment's prohibition on cruel and unusual punishment.[23] *Miller* went on to hold that although a sentencer could still institute a sentence of life imprisonment in homicide cases, the sentencing court was required to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.[24]

In *State v. Mantich*,[25] the defendant, Douglas M. Mantich, a juvenile at the time of his crimes, was convicted of first degree felony murder and use of a firearm to commit a felony. When Mantich was sentenced, Nebraska's statutes provided that a juvenile convicted of first degree murder was subject to mandatory life imprisonment. Accordingly, Mantich was initially sentenced to life imprisonment for the first degree murder conviction and 5 to 20 years' imprisonment for the firearm conviction, to be served consecutively.[26] Mantich appealed, and we affirmed Mantich's convictions and life imprisonment sentence and vacated and remanded his firearm sentence for resentencing.[27]

At the same time we decided Castaneda's direct appeal,[28] we also considered Mantich's appeal of his motion for postconviction relief.[29] In Castaneda's direct appeal, we held that

---

[22] Brief for appellant at 26, 28.

[23] *Miller, supra* note 2.

[24] *Id.*

[25] *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996).

[26] *Id.*

[27] *Id.*

[28] See *Castaneda, supra* note 1.

[29] *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014), *cert. denied* ___ U.S. ___, 135 S. Ct. 67, 190 L. Ed. 2d 229.

"Nebraska's sentence of life imprisonment is effectively life imprisonment without parole under the rationale of *Miller* . . . because it provides no meaningful opportunity to obtain release."[30] Accordingly, we vacated Mantich's life sentence and remanded the cause for resentencing.[31] After a full evidentiary hearing, Mantich was resentenced to 90 to 90 years' imprisonment for his first degree murder conviction. Mantich appealed.

[10,11] In Mantich's most recent appeal,[32] we addressed the issue of *Miller* and its application, and we determined that felony murder is a homicide offense. We also explained that in *Graham v. Florida*,[33] the U.S. Supreme Court held that "life imprisonment without the possibility of parole for juveniles convicted of nonhomicide offenses was unconstitutional."[34] We noted the Court further held that "such juvenile offenders must be given 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'"[35] However, we reasoned that in *Miller*, "the Court declined to extend the categorical bar of no life sentences without parole to juveniles convicted of homicide."[36] Instead, *Miller*'s requirement that a juvenile have a meaningful opportunity for release required that "'a sentencer must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile.'"[37] Accordingly, we rejected Mantich's de facto life sentence argument, "[b]ecause under *Miller* a juvenile defendant may be sentenced to life

---

[30] *Castaneda, supra* note 1, 287 Neb. at 313-14, 842 N.W.2d at 758. See, also, *Mantich, supra* note 8.

[31] *Mantich, supra* note 29.

[32] *Mantich, supra* note 8.

[33] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

[34] *Mantich, supra* note 8, *ante* at 413, ___ N.W.2d at ___.

[35] *Id.*, quoting *Graham, supra* note 33.

[36] *Id.*

[37] *Id.*, quoting *Mantich, supra* note 29.

imprisonment without parole, [therefore,] it is immaterial whether the sentence imposed upon Mantich was a de facto life sentence."[38]

Here, the court held a full evidentiary hearing concerning Castaneda's resentencing. Before issuing the sentences, the court discussed the individualized factors it was required to consider and how they impacted its decision. Even assuming, without deciding, that a court was required to find a juvenile "irreparably corrupt" before issuing him or her a life imprisonment without parole sentence, the court here gave Castaneda no such sentence; instead, it sentenced Castaneda on the low end of the statutory range for each of his eight convictions. Accordingly, Castaneda received the protections required by *Miller* for a juvenile convicted of a homicide offense.

## Vindictive Sentences

In his third assignment of error, Castaneda argues that his new sentences are more severe than his original sentences. While he concedes that the length of his sentences has decreased, he contends that changing his murder and attempted murder sentences from concurrent[39] to consecutive made them inherently more severe. Accordingly, he argues that his resentencing was presumptively vindictive under *North Carolina v. Pearce*.[40]

The State argues that Castaneda's aggregate sentence is not more severe upon resentencing, because he is now eligible for parole after 52½ years, when he was originally sentenced to life in prison without parole. Further, it contends Castaneda

---

[38] *Id.* at 415-16, ___ N.W.2d at ___.

[39] See *State v. Berney*, 288 Neb. 377, 383, 847 N.W.2d 732, 737 (2014) (stating that "[u]nless prohibited by statute or unless the sentencing court states otherwise when it pronounces the sentences, multiple sentences imposed at the same time run concurrently with each other").

[40] *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds, Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

is not entitled to a presumption of vindictiveness, because the resentencing judge was not the same judge that sentenced him originally. Lastly, the State contends that because Castaneda had the burden to prove actual vindictiveness and failed to argue actual vindictiveness, his assignment of error is without merit.

[12] We discussed vindictive resentencing most recently in *State v. Miller*.[41] We explained:

"Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."[42]

Accordingly, we recognized that to relieve a defendant of the apprehension of vindictiveness, *Pearce* required that courts apply a presumption of vindictiveness whenever a sentence is increased after a successful appeal of the prior conviction.

[13,14] However, we also recognized that the U.S. Supreme Court has limited this presumption since *Pearce* to "cases which pose a reasonable likelihood that the increased sentence is the product of actual vindictiveness."[43] Accordingly, we stated: "[The] Court has limited the presumption of vindictiveness to cases that involve the same judge or jury handing down both the initial sentence and the second, harsher sentence. . . . [Alternatively, w]hen the presumption of vindictiveness is not applied, the burden remains with the defendant to prove actual vindictiveness."[44]

---

[41] *Miller, supra* note 10.

[42] *Id*. at 501, 822 N.W.2d 364, quoting *Pearce, supra* note 40.

[43] *Id*. at 502, 822 N.W.2d 364, citing *Smith, supra* note 40.

[44] *Id.* at 502, 504, 822 N.W.2d 364, 366, citing *Smith, supra* note 40.

Here, Castaneda was sentenced by two different judges. Therefore, we agree with the State that Castaneda is not entitled to a presumption of vindictiveness.

Further, Castaneda made no argument of actual vindictiveness, and our review of the record does not reveal any impermissible considerations or vindictiveness by the court. Instead, the court weighed the required factors under the relevant case law and § 28-105.02. The court also took into consideration the fact that Castaneda was not the shooter and that he had decreased cognitive ability due to his age and immaturity. However, the court could not overlook the fact that Castaneda was involved in three distinct incidents of gun violence that resulted in the deaths of two people and the wounding of a third. Ultimately, the court believed that Castaneda's youth entitled him to sentences on the low end of the statutory range, but that his actions required he serve the sentences consecutively. Consequently, we conclude Castaneda's assignment of error is without merit.

## CONCLUSION

The sentences of the district court are affirmed.

AFFIRMED.