Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/18/2018 02:14 AM CDT

State of Nebraska, appellee, v.
Charles S. Trotter, appellant.
___ N.W.2d ___

Filed March 23, 2018.    No. S-16-1146.

1. **Rules of Evidence: Appeal and Error.** An appellate court reviews
   for abuse of discretion a trial court's evidentiary rulings on relevance,
   whether the probative value of evidence is substantially outweighed by
   the danger of unfair prejudice, and the sufficiency of a party's founda-
   tion for admitting evidence.
2. **Constitutional Law: Sentences.** Whether a sentence constitutes cruel
   and unusual punishment in violation of the Eighth Amendment presents
   a question of law.
3. **Judgments: Appeal and Error.** When reviewing a question of law,
   an appellate court reaches a conclusion independent of the lower
   court's ruling.

Appeal from the District Court for Douglas County: Leigh
Ann Retelsdorf, Judge. Affirmed.

James Martin Davis, of Davis Law Office, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R.
Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke,
JJ., and Riedmann and Arterburn, Judges.

Heavican, C.J.

## INTRODUCTION

Charles S. Trotter was convicted of two counts of first
degree murder and two counts of use of a deadly weapon
to commit a felony. He was sentenced to a term of 40 to 60

years' imprisonment for each murder conviction and 5 to 10 years' imprisonment for each use conviction, to be served consecutively.

On direct appeal, Trotter, who was 16 years of age at the time of the events for which he was convicted, alleges that the district court erred in not admitting photographs he claims support his defense that another individual committed the murders and that his collective sentence of 90 to 140 years' imprisonment was the functional equivalent of a sentence of life imprisonment. We affirm.

## BACKGROUND

Trotter was charged in the January 3, 2015, shooting deaths of Marcel Lovejoy and Dexter Joseph. Lovejoy and Joseph were shot while attending a party at an apartment complex in Omaha, Nebraska. At trial, three eyewitnesses testified that Trotter was the shooter.

Trotter's defense was mistaken identity: He claimed that the witnesses who identified him mistook him for DeAndre Hines. He attempted to introduce into evidence photographs of Hines, which were found on Hines' cell phone during a consensual search of that phone by law enforcement. The photographs were taken on two different days toward the end of December 2014 and depicted Hines holding a silver and black handgun.

Anticipating an objection to these photographs, Trotter's counsel sought a sidebar prior to the offering of the photographs:

> [Counsel for Trotter]: Okay. Here is the screenshot. It's dated December 29th of 2014, which is a couple of days beforehand, and that's — although you may not be able to tell, that clearly is . . . Hines with a gun that is similar to the one described by the witnesses as silver and black.
>
> Show them the next picture. For your information, the next one is taken on — okay. There it is. Similar gun, . . .

Hines on New Year's Eve. He doesn't have — doesn't have the time on there. It's 7:56 p.m., it looks like, and once again, I believe that he's in possession of a gun that is similar to the one described by the witness, silver and black.

And so I would — my intention would be to ask him if he got them from — captured them from the phone, and put them into evidence, and I want to do this beforehand, so it's not —

THE COURT: I appreciate that you are playing fair.

[The State]: The State would object, first off, on relevance. I don't know if that is, in fact, a gun or a BB gun. It looks like a real gun. I can't tell from looking at the photo what caliber of weapon it is. I can't tell if it's a 9 millimeter or a .40 caliber or a .22. In terms of — so we have a relevance objection.

I would also object on 403 and also on 404, because I think what [Trotter's counsel] is trying to show is propensity evidence of the fact that this person possessed a gun a week or four days before this crime so that he must have been the person possessing the gun on the day of.

THE COURT: All right. My — my recollection — I don't recall a witness saying anything about the gun was black and silver, maybe there was someone that said silver, but I only recall black — a description as black, but regardless of that, I would agree that the relevance is overweighed by the potential prejudice, and I would not allow you to put those in.

[Counsel for Trotter]: May I just respond briefly? This is not 404 evidence. This is evidence that he had possession of the weapon or a similar weapon on the day of, so I wasn't trying to show any propensity there. I understand the Court's ruling. It was more in line with 403 and relevance.

THE COURT: That's right. And the other problem that I have with that, there is clear gang signs in the second

photo, so I wouldn't let it in because of the motion in limine.

I don't remember the first one. Go back to the first one.

[Counsel for Trotter]: There is none on that one.

THE COURT: Yeah, and, again, that appears to be a silver weapon when the only witness description I have is black, and, again, I think the small amount of relevance is overweighed by the — by 403 on this.

[Counsel for Trotter]: I will — I do have pictures that I will ask to be marked during a break. I can make an offer of proof that way. Okay?

THE COURT: Absolutely. We will reserve the opportunity to make an offer of proof until the next break, which will probably be over the noon hour.

[Counsel for Trotter]: Okay.

THE COURT: All right.

[Counsel for Trotter]: Okay. Thanks.

## ASSIGNMENTS OF ERROR

Trotter assigns that the district court erred in (1) not admitting exhibits 292 and 293, which were photographs of an individual Trotter argued was the actual perpetrator, wearing clothes matching the description of the shooter and holding a gun, and (2) sentencing him to a functional life sentence, in violation of the Eighth Amendment to the U.S. Constitution.

## STANDARD OF REVIEW

[1] An appellate court reviews for abuse of discretion a trial court's evidentiary rulings on relevance, whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, and the sufficiency of a party's foundation for admitting evidence.[1]

[2,3] Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents

---

[1] *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017).

a question of law.[2] When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[3]

## ANALYSIS

*Admissibility of Photographs.*

Trotter first asserts that the district court erred in not admitting exhibits 292 and 293, which were photographs of Hines. The district court refused to admit these photographs, contending that "the small amount of relevance is overweighed by [evidence rule] 403 on this."

Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 2016), provides that "relevant evidence is admissible [and] [e]vidence which is not relevant is not admissible." Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), qualifies that admissibility: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Exhibit 292 is a photograph taken on December 29, 2014, of Hines wearing a gray button-up hooded sweatshirt and holding a black and silver handgun. Exhibit 293 is a photograph taken on December 31 of Hines and another individual. In this latter photograph, Hines is apparently wearing the same gray hooded sweatshirt, now unbuttoned, and is pointing a gun at the camera. The other individual in the photograph is displaying a gang sign. Both photographs are out of focus.

Trotter argues that these photographs are relevant, because in them, Hines is wearing a sweatshirt similar to the one which witnesses describe the shooter as wearing and is carrying a gun similar to the one described by those witnesses. There is no merit to Trotter's assertions.

---

[2] *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017).

[3] *Id.*

We first observe that Trotter did not argue at trial that these exhibits were relevant because they showed Hines wearing a gray hooded sweatshirt similar to the one worn by the shooter. Thus, Trotter has not preserved that argument for purposes of this appeal. We note, however, that exhibit 235, which was received, is also a photograph of Hines wearing the same sweatshirt. To the extent exhibits 292 and 293 might have been admissible for that purpose, those exhibits would have been cumulative evidence and, on these facts, any error would have been harmless.

Nor was the district court's failure to admit these exhibits because of the depiction of the handgun reversible error. Assuming without deciding that these photographs were relevant, any relevance is minimal.

Trotter argued at trial that the photographs were admissible, because the gun depicted was "similar" to the one described by the witnesses. But as the district court noted, the gun in these exhibits was silver and black, while the only testimony at trial about the color of the weapon used by the shooter was that it was black. Nor was there any evidence presented that this handgun was the caliber of weapon used in the shooting or that the gun was even a real gun. The gun used in the shootings was never recovered by law enforcement. Other evidence at trial showed that a bullet matching the caliber of the bullets used in the shootings was found in a couch near Trotter's possessions in the home where he was living.

The uncontroverted testimony at trial was that the shooter was carrying a black handgun. Exhibit 292 depicts a predominantly silver handgun with some black accents. It is not possible to identify the characteristics of the gun shown in exhibit 293. Given these contradictions, the risk of juror confusion is present. Admitting photographs showing a gun that does not match the description offered by any testifying witnesses could confuse the issues presented at trial and have a tendency to mislead the jury. The members of the jury may place more emphasis on exhibits, including a photograph of any handgun,

particularly given that the gun used in these shootings was never recovered and therefore was not offered as evidence at trial. Given this risk, we cannot conclude that the district court abused its discretion in excluding the exhibits by reasoning that "the small amount of relevance [was] overweighed by [evidence rule] 403 on this."

There is no merit to Trotter's first assignment of error.

*Sentences.*

Trotter also argues that the district court's sentences of a combined 90 to 140 years' imprisonment was the functional equivalent of a life sentence, which is a violation of the Eighth Amendment as interpreted by *Miller v. Alabama*.[4] This argument is without merit.

We recently decided *State v. Castaneda*.[5] At issue in *Castaneda* was whether the defendant's combined sentence of 105 to 125 years' imprisonment was an effective life sentence because it did not provide a "'meaningful opportunity to obtain release.'"[6] We rejected that contention in *Castaneda*, reasoning in that case:

[T]he court held a full evidentiary hearing concerning [the defendant's] resentencing. Before issuing the sentences, the court discussed the individualized factors it was required to consider and how they impacted its decision. Even assuming, without deciding, that a court was required to find a juvenile "irreparably corrupt" before issuing him or her a life imprisonment without parole sentence, [an argument the defendant made on appeal,] the court here gave [the defendant] no such sentence; instead, it sentenced [him] on the low end of the statutory range for each of his eight convictions. Accordingly, [the

---

[4] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[5] *State v. Castaneda*, 295 Neb. 547, 889 N.W.2d 87 (2017).

[6] *Id.* at 559, 889 N.W.2d at 96.

defendant] received the protections required by *Miller* for a juvenile convicted of a homicide offense.[7]

Trotter was convicted of two counts of first degree murder and two counts of use of a deadly weapon to commit a felony. The district court noted at sentencing that it was "clear . . . that [Trotter's] type of antisocial behavior [was] significantly attached due to the fact of his age as opposed to being pre-determined type of behaviors that the doctor would predict would last through adulthood." Nevertheless, the district court observed that it became "an unworkable situation," because a sentence with a reduced upper sentence limit "wouldn't take into account the fact that there [were] two separate victims." The court then imposed the minimum sentence for each of the convictions against Trotter and ordered those sentences to run consecutively.[8]

As we found in *Castaneda*, Trotter received the protections required by *Miller* for a juvenile convicted of a homicide offense. We conclude that Trotter's second assignment of error is without merit.

## CONCLUSION

The judgment and sentences of the district court are affirmed.

Affirmed.

Wright and Kelch, JJ., not participating.

---

[7] *Id.* at 560, 889 N.W.2d at 97.

[8] See Neb. Rev. Stat. §§ 28-105 (Cum. Supp. 2014) and 28-105.02 and 28-1205 (Reissue 2016).